**LABORERS' PENSION TRUST FUND,
et al., Plaintiffs–Appellees,**

v.

**SIDNEY WEINBERGER HOMES, INC.,
et al., Defendants–Appellants.**

No. 88–1040.

United States Court of Appeals,
Sixth Circuit.

Argued Nov. 15, 1988.
Decided Dec. 14, 1988.

Mark Granzotto (argued), Detroit, Mich., for Laborers' Pension Trust Fund—Detroit and Vicinity, Laborers' Vacation & Holiday Trust Fund—Detroit and Vicinity and Laborers' Metro Detroit Health & Welfare Fund.

Ralph Sosin (argued), Birmingham, Mich., for Sidney Weinberger Homes, Inc., Sidney Weinberger and Marlene Weinberger.

Before NELSON and BOGGS, Circuit Judges, and ENSLEN, District Judge.[*]

PER CURIAM.

Weinberger Homes, Inc. and Sidney Weinberger appeal the district court's grant of summary judgment to plaintiffs-appellees. The district court found that the defendants failed to fund their employees' benefit packages properly and awarded damages of $41,443.14.

Sidney Weinberger Homes, Inc. ("Weinberger Homes") was incorporated in the early 1970's and was in the business of building private houses. All of the stock of

the corporation was owned by Sidney Weinberger. Weinberger Homes ceased operations as a corporation in April 1983. Weinberger Homes was basically unprofitable throughout its existence, and was used by Mr. Weinberger primarily to facilitate the purchase of land.

Because Weinberger Homes was unprofitable, Weinberger made repeated deposits of personal funds into the corporate account. Weinberger characterized these deposits as loans, but they were made without any written or oral contract setting out terms of repayment or interest. The loans were reflected by the issuance of a promissory note from the corporation to Sidney Weinberger. During the period August 1981 through March 1983, Weinberger made approximately one hundred twenty "loans" to the corporation, totalling over $400,000.

In addition to his interest in Weinberger Homes and various development corporations, Weinberger owned Bygone Gallery of Glass and Weinberger Custom Cabinets. These corporations often did work for Weinberger, and they would be paid by Weinberger Homes and not Weinberger. Weinberger Homes also had loaned money to or was owed money by Bygone Gallery, Weinberger–Willsek, Shelby Dairy Queen, Weinberger Real Estate, and College Park, all companies in which Weinberger had an interest. Weinberger Homes also worked on projects for Weinberger without a written contract.

Weinberger Homes was housed at one time in an office building that it had constructed and which was owned by Weinberger. However, the corporation never paid rent, nor did it pay costs such as secretarial expenses, which were instead assumed by Weinberger personally.

In 1982, Weinberger decided to close Weinberger Homes for financial reasons. Between November 1982 and April 1983, over $350,000 worth of assets were transferred to Weinberger personally. Wein-

* The Honorable Richard A. Enslen, United States District Judge for the Western District of Michigan, sitting by designation.

berger admitted that he made the decision to transfer the assets, and that Weinberger Homes also owed $270,000 to other creditors at the time.

In July 1979, Weinberger signed on behalf of Weinberger Homes a copy of the 1978–80 collective bargaining agreement between the Associated General Contractors of America (AGC) and Local Unions 334 and 1076 of the Laborers' International Union of North America ("Laborers' Union"). Weinberger then signed an interim document on July 25, 1980, obligating him to the Supplemental 1980–82 Collective Bargaining Agreement between the AGC and the Laborers' Union. This Supplemental Agreement contained a roll-over clause that continued the contract in force until 1984 unless the contract was specifically disclaimed. Under the terms of the Supplemental Agreement, Weinberger Homes was obligated to pay fringe benefit contributions for certain laborers. When Weinberger Homes did not pay all amounts to which the plaintiffs claimed entitlement, they conducted an audit of the corporation's books and records.

Plaintiffs originally instituted an action against Weinberger Homes, Sidney Weinberger, and Marlene Weinberger, his wife, on June 25, 1985, alleging that Mr. Weinberger was the "employer" of laborers working for Weinberger Homes as the term "employer" was defined in § 3(5) of ERISA, 29 U.S.C. § 1002(5). Plaintiffs also alleged that Weinberger was personally liable for the contractual indebtedness of Weinberger Homes. The plaintiffs claimed jurisdiction pursuant to 29 U.S.C. § 185(a), because of the alleged violation of their ERISA trust agreement.

After amendment of the complaint and discovery, defendants filed a Motion for Summary Judgment claiming that plaintiffs' pleadings regarding Weinberger's personal liability were inadequate. Plaintiffs also filed a Motion for Summary Judgment. Attached to plaintiffs' motion was an affidavit of Mr. Dahl, an auditor for plaintiffs, who stated that he had examined the books of Weinberger Homes and determined that it was contractually obligated to plaintiffs for $41,443.14 in unpaid contributions for the period January 1980 through April 1983. Plaintiffs were later allowed to file an amended complaint amplifying their theory regarding personal liability of Weinberger. This amended complaint specified that Weinberger was both the "employer" as the term is defined in ERISA and that he was the alter ego of Weinberger Homes.

At the conclusion of a hearing held on September 17, the district court ruled from the bench that plaintiffs were entitled to judgment against both Weinberger Homes and Sidney Weinberger as its alter-ego in the full amount revealed by the audit. The court also denied the defendants' motion for summary judgment. A judgment consistent with the district court's oral opinion was entered on December 4, 1987.

I

When reviewing the granting of summary judgment by the district court, this court must determine if there is any genuine issue of material fact such that a jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986).

Appellants' main contention on appeal is that Sidney Weinberger is not the alter-ego of Weinberger Homes, Inc. It is true that there is a presumption that a corporation is a separate entity from its shareholders. *Contractors, Laborers, Teamsters & Engineers Health Plan v. Hroch*, 757 F.2d 184, 190 (8th Cir.1985) (citing *Lakota Girl Scout Council, Inc. v. Havey Fund–Raising Management, Inc.*, 519 F.2d 634, 638 (8th Cir.1975)). However, a court can pierce the corporate veil if "there are substantial reasons for doing so" after weighing: (1) the amount of respect given to the separate entity of the corporation by its shareholders; (2) the degree of injustice visited on the litigants by recognition of the corporate entity; and (3) the fraudulent intent of the incorporators. *Id.* (citing *Seymour v. Hull & Moreland Engineering*, 605 F.2d 1105, 1109 (9th Cir. 1979)). Factors to be considered include undercapitalization of the corporation, the

maintenance of separate books, the separation of corporate and individual finances, the use of the corporation to support fraud or illegality, the honoring of corporate formalities, and whether the corporation is merely a sham. *Id.* (citing *Lakota*, 519 F.2d at 638).

■ In the present case, even construing the facts most favorably to the defendant, it is clear that Weinberger "loaned" money to the corporation with no formal agreements, Weinberger paid expenses of the corporation out of his pocket, the corporation paid personal expenses of Weinberger, the corporation was operated solely for Weinberger's personal benefit, records of various expenses were generally inadequate, and Weinberger withdrew money from the corporate entity when the corporation ended while some creditors were left unpaid. Therefore, many of the factors outlined in *Hroch* are implicated in the present case.

The defendant cites various cases which analyze one factor or another as being dispositive of the issue of piercing the corporate veil. However, none of these factors is a prerequisite to a finding that the corporate form has been violated. Further, the Supreme Court has stated that the recognition of corporate form can be related to legislative policies. *See First National City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611, 630, 103 S.Ct. 2591, 2601, 77 L.Ed.2d 46 (1983). The First Circuit has held that deference to the corporate identity may be particularly inappropriate in relation to ERISA because Congress enacted ERISA in part to protect employees who were being deprived of anticipated benefits by a corporate sham. *Alman v. Danin*, 801 F.2d 1, 3–4 (1st Cir. 1986).

Thus, even construing all facts favorably to the defendant, there was clear evidence that the corporate form had been disregarded on numerous occasions, that fraud may have occurred when Weinberger withdrew funds from the corporation before its dissolution, and that the plaintiffs were left without an adequate remedy. Given that the case involves benefits under ERISA, and Congress has indicated that the purposes of ERISA affect the standard by which we disregard a corporate form, we agree with the district court that the corporate veil of Weinberger Homes should be pierced.

## II

Appellants also claim that the damages found by the district court were incorrect in two respects: (1) the court was incorrect in its determination of the term of the contract, and (2) the court was incorrect in its determination of the employees covered by the agreement.

■ As to the first, Weinberger Homes contends that it was only a signatory to the interim document and never signed nor saw the Supplemental Agreement between the Associated General Contractors of America and the Laborers' Union which ran from 1980 to 1982. However, in signing the interim document, Weinberger Homes agreed to be bound by the 1980–82 Supplemental Agreement which contained a rollover clause.

It is undisputed that Weinberger Homes signed the interim agreement, that Weinberger Homes never cancelled this agreement, and that there was a new laborers' and contractors' agreement signed by the AGC and the Laborers' Union covering 1982–84. Therefore, the facts are not in dispute. Though Weinberger claims that he never received a copy of the 1980–82 agreement and thus, presumably, was not aware of the roll-over clause, the effect of such a roll-over clause or Weinberger's notice of the clause is a legal question not challenged by appellants. Therefore, the judgment of the district court on the length of the contract term must stand.

Appellants also claim that there was a genuine issue of fact as to how many employees were covered by the agreement. The plaintiffs asserted and the trial court found that six people were laborers as that term was applied in the interim supplemental agreement signed by Weinberger. This number was based on a written response by Weinberger's attorney, an audit of the

books of Weinberger Homes, and Weinberger's own deposition testimony that these six people were covered by the agreement.

Appellants' claim to a genuine issue of fact arises from a later affidavit signed by Mr. Weinberger that stated that not all of these six people were laborers within the meaning of the term. However, this circuit has held that "a party may not create a factual issue by filing an affidavit, after a motion for summary judgment has been made, which contradicts his earlier deposition testimony." *Reid v. Sears, Roebuck and Co.*, 790 F.2d 453 (6th Cir.1986). Therefore, there was no genuine issue of how many people were covered by the agreement, and appellant cannot defeat the motion for summary judgment on this basis.

### III

█ Appellants also contend that the plaintiffs' action was barred by the applicable statute of limitations, which they claim is three years. In support of their position, appellants point out that the statute of limitations in Michigan for corporate suits is three years. *See* M.C.L.A. § 450.1554.

Appellees contend that we should not even consider this argument as it was not raised in the district court. However, the argument is easily disposed of.

In *Central States Southeast and Southwest Areas Pension Fund v. Kraftco, Inc.*, 799 F.2d 1098 (6th Cir.1986), this court considered the appropriate statute of limitations in an action initiated in a Tennessee federal court to collect delinquent pension contributions pursuant to ERISA, since ERISA does not supply its own statute of limitations. This court held that the Tennessee six-year statute of limitations for actions under a written contract was the most analogous state statute of limitations to ERISA. *Id.* at 1105.

In the present case, the district court used *Kraftco* as a guide and applied Michigan's statute of limitations governing actions based on written contracts, which is also six years. *See* M.S.A. § 27A.5807(8) [M.C.L.A. § 600.5807(8) ].

The appellants' argument that the court should have applied different statutes of limitations for the individual defendant and the corporate defendant is unconvincing. This argument would lead to the conclusion that an action to collect unpaid fringe benefit contributions could have one limitations period applicable to one defendant, while a second defendant sued under the same statute would be subject to a different limitations period. In *Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985), the Supreme Court refused to hold that 42 U.S.C. § 1983, which also does not specify a statute of limitations, allowed more than one statute of limitations per state depending upon the legal character of the parties involved.

### IV

█ Lastly, appellants claim that the district court incorrectly awarded pre-judgment interest back to the filing of the original complaint by plaintiffs (on July 30, 1986) even though plaintiffs did not amend the complaint to allege that Mr. Weinberger was the alter ego of Weinberger Homes until August 14, 1987.

Though they are not cross-appealing, the appellees assert that the district court should have awarded interest from the time of the alleged breach—that is from 1980, and that any award dating from later than 1980 is to the appellants' benefit.

In *South Central United Food & Commercial Workers Unions v. C & G Markets, Inc.*, 836 F.2d 221, 225 (5th Cir.1988), the Fifth Circuit held that 29 U.S.C. § 1132(g)(2) required interest to be calculated from the date of the deficiency until the deficiency is paid. In the present case, the deficiency first occurred in 1980. Therefore, appellees are correct in their assertion that awarding interest as of July 1986 did not harm the appellants and therefore should not be overturned.

The judgment of the district court is AFFIRMED.