# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

NANCY WISE,

       *Plaintiff-Appellant,*

v.

VERIZON COMMUNICATIONS INC.,
formerly known as GTE, a
Delaware corporation; PLAN FOR
GROUP INSURANCE; METROPOLITAN
LIFE INSUANCE COMPANY, a foreign
insurer licensed to do business in
the State of Washington,

       *Defendants-Appellees.*

No. 08-35866

D.C. No.
2:08-cv-00409-MJP

OPINION

Appeal from the United States District Court
for the Western District of Washington
Marsha J. Pechman, District Judge, Presiding

Argued and Submitted
December 8, 2009—Seattle, Washington

Filed April 8, 2010

Before: Ronald M. Gould and Richard C. Tallman,
Circuit Judges, and Roger T. Benitez,* District Judge.

Opinion by Judge Gould

---

*The Honorable Roger T. Benitez, United States District Judge for the Southern District of California, sitting by designation.

**COUNSEL**

Steven P. Krafchick, Krafchick Law Firm, Seattle, Washington, for the plaintiff-appellant.

Timothy J. O'Connell (argued) and Elena C. Burt, Stoel Rives LLP, Seattle, Washington, for the defendants-appellees.

**OPINION**

GOULD, Circuit Judge:

**I**

Nancy Wise worked for GTE in 1997 when she was diagnosed with multiple sclerosis. Later that year, Wise left GTE to work for another employer, Qwest, where her employee benefits included a long-term disability plan that covered her multiple sclerosis. In 1999, GTE sought to recruit Wise to return to work for GTE, but Wise hesitated to leave Qwest and abandon her benefits coverage without assurances that she would have full benefits coverage upon her return to GTE. To induce Wise to return, GTE promised Wise that her benefits coverage would "bridge" back to her original employment date in 1995, such that Wise's benefits eligibility would be retroactive and not subject to coverage limitations based on pre-existing conditions. The GTE recruitment team understood that the bridging of benefits was a standard practice at the company.

Wise accepted GTE's offer and returned to the company as a sales representative in March 1999. After a merger, GTE became Verizon Communications Inc., but the employee welfare benefit plan, including the long-term disability plan, remained the same. Wise was diagnosed with breast cancer in 2000, which was complicated by her multiple sclerosis. She applied for long-term disability benefits and her application was initially approved by the Metropolitan Life Insurance Company (MetLife), the administrator of Verizon Communications' benefit plan. In 2001, Wise's multiple sclerosis specialist sent a letter to MetLife containing her opinion that Wise's physical and cognitive symptoms were worsening and that Wise was unlikely to be able to return to work.

A month later, MetLife terminated Wise's disability benefits, concluding, contrary to Wise's multiple sclerosis special-

ist, that Wise was able to perform the regular duties of her normal sales job. Wise appealed, submitting additional medical documentation of her limitations. MetLife upheld its decision to terminate benefits, concluding that even if Wise could not perform her previous job, there was insufficient medical documentation to show that she could not perform any work. MetLife added, for the first time, that it deemed Wise's multiple sclerosis a condition that pre-existed her benefits eligibility, and that, accordingly, the multiple sclerosis was not covered by Wise's long-term disability plan.

Wise appealed once more, and was later sent a responsive letter dated March 14, 2002, stating in part:

> On March 8, 2002, the Verizon Claims Review Committee . . . reviewed your request for Long-Term Disability (LTD) benefits under The Plan for Group Insurance . . . . Based on all of the information available to the Committee and after a thorough review of your claim file, your appeal for LTD benefits must be denied. . . . Please be advised that all decisions of the Committee are final.

The Verizon Claims Review Committee, which administered the long-term disability plan along with MetLife, concluded that Wise's multiple sclerosis was a pre-existing condition that was not covered by the long-term disability plan. Disregarding any limitations caused by multiple sclerosis, the Verizon Claims Review Committee determined that Wise was capable of performing part-time, sedentary work and was therefore not disabled. The letter told Wise that she had a right to bring a civil action under the Employee Retirement Income Security Act (ERISA) to appeal the final denial of benefits.

Wise filed this action in federal court on March 11, 2008. She pleaded three claims against MetLife and the Verizon Claims Review Committee (collectively "Plan Administra-

tors") under ERISA, requesting past and future disability benefits, removal of the Plan Administrators as plan fiduciaries, and other appropriate equitable relief. Wise also pleaded one claim against her former employer, Verizon Communications, alleging that its conduct in recruiting and rehiring her constituted fraud, misrepresentation, and negligence in violation of Washington statutory and common law. The defendants filed a joint motion to dismiss all of Wise's claims under Federal Rule of Civil Procedure 12(b)(6).

The district court granted the defendants' motion to dismiss in its entirety. The district court held that Wise's benefits-recovery claim was governed by Washington's three-year statute of limitations for partly oral contracts instead of being governed by the six-year limitations period that Wise urged should be applied. Under the three-year statute of limitations, Wise's claim was time barred, though under the six-year statute the claim might have proceeded. The district court held that the claims for breach of fiduciary duty and for equitable relief were duplicative of the benefits-recovery claim and thus barred. Finally, the district court held that Wise's state law claims were preempted by ERISA, or, in the alternative, were barred by the applicable Washington statute of limitations for fraud, misrepresentation, and negligence.

Wise timely appealed. We review de novo the district court's dismissal under Rule 12(b)(6). *Scharff v. Raytheon Co. Short Term Disability Plan*, 581 F.3d 899, 903 (9th Cir. 2009).

## II

**[1]** We first address Wise's claim to recover benefits under 29 U.S.C. § 1132(a)(1)(B). ERISA does not contain its own statute of limitations for suits to recover benefits under 29 U.S.C. § 1132(a)(1)(B). Under our precedent, district courts apply the state statute of limitations that is most analogous to an ERISA benefits-recovery action. *Wetzel v. Lou Ehlers*

*Cadillac Group Long Term Disability Ins. Program*, 222 F.3d 643, 646-47 (9th Cir. 2000) (en banc). Before applying the proper Washington statute of limitations, we must first consider the threshold question of how many statutes of limitations may properly apply to an ERISA benefits-recovery claim arising in any one state.

**A**

It is not uncommon for Congress to create a federal claim that does not include an explicit statute of limitations. *See, e.g.*, 18 U.S.C. § 1964 (civil enforcement action under the Racketeer Influenced and Corrupt Organizations Act); 29 U.S.C. § 412 (civil action under the Labor-Management Reporting and Disclosure Act); 29 U.S.C. § 185 (civil action under the Labor-Management Relations Act); 42 U.S.C. § 1983 (enforcement action for deprivation of civil rights). With such statutes, "the settled practice has been to adopt a local time limitation as federal law if it is not inconsistent with federal law or policy to do so." *Wilson v. Garcia*, 471 U.S. 261, 266-67 (1985), *superseded by statute on other grounds*, Pub. L. No. 101-650, 104 Stat. 5089, 5114-15 (1990).

**[2]** Two important Supreme Court precedents suggest that federal courts engaged in "limitations borrowing" should select only one limitations period per state for any given federal claim. In *Wilson v. Garcia*, the Supreme Court addressed the proper limitations period for a civil rights claim under 42 U.S.C. § 1983. 471 U.S. at 262. The Court phrased the task before it as a determination of "*the* most appropriate state statute of limitations to apply to [§ 1983] claims." *Id.* (emphasis added). A uniform rule was desirable because the lower courts that had "predicated their choice of the correct statute of limitations on an analysis of the particular facts of each claim" had found themselves refereeing limitations litigation that was "ever-increasing," "unproductive," and "useless." *Id.* at 272, 275. The Supreme Court explained that allowing the particu-

lar facts of each § 1983 claim to control the limitations period meant that "counsel could almost always argue . . . that two or more periods of limitations should apply to each § 1983 claim. Moreover, under such an approach different statutes of limitations would be applied to the various § 1983 claims arising in the same State, and multiple periods of limitations would often apply to the same case." *Id.* at 274. The Court in *Wilson* rejected the idea that Congress would have considered such extensive collateral litigation consonant with the "remedial purpose" of § 1983, and the Court rather chose the option of requiring a "simple, broad characterization" of § 1983 claims for limitations purposes: a personal injury tort action for damages. *Id.* at 272, 276.

*Wilson* was followed four years later by *Owens v. Okure*, 488 U.S. 235 (1989), which again disfavored a case-by-case approach to determining the proper statute of limitations for a § 1983 claim. *Id.* at 240. In the wake of *Wilson*, the courts of appeals had conflicted in their decisions over whether to apply the intentional-tort statute of limitations or the state's residual limitations period for torts. *Id.* at 241-42. The Supreme Court in *Owens* selected the residual period alone, emphasizing that permitting more than one statute of limitations to operate per state creates "chaos and uncertainty." *Id.* at 243, 249-50. The adoption of one limitations period in each state advanced the federal interest in predictability, "a primary goal of statutes of limitations." *Id.* at 240.

**[3]** The rationales underlying the rules of *Wilson* and *Owens* in § 1983 cases apply equally to the ERISA context. The civil enforcement provisions of ERISA are remedial. ERISA "provides a panoply of remedial devices for participants and beneficiaries of benefit plans." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 108 (1989) (internal quotation marks omitted). As the *Wilson* Court stressed with reference to § 1983, there is no reason to think that Congress wanted ERISA benefits-recovery suits to be bogged down by collateral litigation over the applicable statute of limitations.

ERISA's dual aims "to protect the interests of employees in pension and welfare plans" as well as "to protect employers from conflicting and inconsistent state and local regulation" both weigh in favor of selecting only one statute of limitations per state. *See Henkin v. Northrop Corp.*, 921 F.2d 864, 867 (9th Cir. 1990); *cf. Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 142 (1990) (discussing ERISA's preemption provision and its goal of minimizing inefficiencies and administrative burdens on plans and plan sponsors). Avoiding procedural uncertainty helps every actor in a benefits-recovery action: the plaintiff, the plan defendant, and the court adjudicating the claim. All benefit from having a bright line rule on the necessary procedures for claims.

Although decisions in our circuit have not heretofore explicitly said that only one statute of limitations per state shall be applied to an ERISA benefits-recovery claim, our analysis leads us to conclude that that principle has been in the background of our prior ERISA limitations decisions. This is not surprising in light of the thrust of *Wilson* and *Owens*. For example, in *Wetzel v. Lou Ehlers Cadillac Group Long Term Disability Insurance Program*, we changed our previously-held view on the statute of limitations applicable to an ERISA benefits claim arising in California. 222 F.3d at 648. In a prior case, we had determined that an ERISA benefits-recovery claim was most analogous to a disability claim under the California Insurance Code and we applied the corresponding three-year statute of limitations. *Id.* at 647 (citing *Nikaido v. Centennial Life Ins. Co.*, 42 F.3d 557 (9th Cir. 1994)). Upon reexamining California law, our en banc panel overruled the prior *Nikaido* decision and determined that the California statute of limitations for written contracts "provides the applicable statute of limitations for an ERISA cause of action based on a claim for benefits under a written contractual policy in California." *Id.* at 648.

In the course of reviewing *Wetzel* en banc, we would have had no occasion at all to overrule our prior precedent in

*Nikaido*—that would not have been necessary, nor appropriate —if more than one California statute of limitations could apply to an ERISA benefits claim. If such a result were desirable, the *Wetzel* panel could have distinguished *Nikaido* and applied the limitations period for a written contract to the case before it. That the en banc panel overruled *Nikaido* on its way to impose the written-contract limitations period discloses the underlying principle that only one limitations period per state should be applied to an ERISA benefits-recovery action, an approach that will favor simplification and clarity for litigants and for courts.

The Sixth Circuit has made its agreement with the one-statute-per-state rule explicit. In *Laborers' Pension Trust Fund v. Sidney Weinberger Homes, Inc.*, 872 F.2d 702 (6th Cir. 1988) (per curiam), the ERISA defendant argued that while a six-year statute of limitations based on a written-contract action would apply in some benefits-recovery cases, a shorter three-year period should apply under Michigan law when the case involves a corporate defendant. *Id.* at 706 (citing Mich. Comp. Laws §§ 450.1554 and 600.5807(8)). The Sixth Circuit rejected the argument that the limitations period could vary from case to case based on the characteristics of the defendant. The court explained that the defendants' argument would mean that an identical suit "could have one limitations period applicable to one defendant, while a second defendant sued under the same statute would be subject to a different limitations period." *Id.* Citing the Supreme Court's decision in *Wilson* as rejecting the idea that "more than one statute of limitations per state" could apply to a federal cause of action, the Sixth Circuit held that the defendants' argument was thus "easily disposed of." *Id.*

**[4]** It can be argued that if Congress wanted a uniform statute of limitations, it would have enacted one, and that in the absence of such an enactment state law controls, even if that means more than one limitations period per state may apply.[1]

---

[1]Congress has enacted a four-year statute of limitations for civil actions arising under federal statutes enacted after December 1, 1990. 28 U.S.C.

*See Johnson v. State Mut. Life Assurance Co. of Am.*, 942 F.2d 1260, 1262 (8th Cir. 1991) (en banc); *but see Harris v. The Epoch Group, L.C.*, 357 F.3d 822, 825-27 (8th Cir. 2004) (declining to consider a new statute of limitations not considered in *Johnson*). We do not think this argument is persuasive. The intricacies of state law may apply to a federal claim only to the extent that those intricacies are not inconsistent with federal interests. *Wilson*, 471 U.S. at 267; *see also Jenkins v. Local 705 Int'l Bhd. of Teamsters Pension Plan*, 713 F.2d 247, 251 (7th Cir. 1983) ("In determining the most appropriate state statute of limitations, the court must be cognizant of and examine . . . the federal policies involved."). As we have already said, ERISA was intended to provide a remedy to plan beneficiaries, *as well as* to create stability for plans. This latter goal includes safeguarding plans from unanticipated claims arising from unpredictable applications of each state's various statutes of limitations. The federal goal of creating predictability for plan sponsors and administrators prevents us from allowing more than one statute of limitations per state to apply.

**[5]** In sum, we agree with the Sixth Circuit's application of *Wilson* to the ERISA context. *See Laborers' Pension Trust Fund*, 872 F.2d at 706. We are convinced that the "federal interests in uniformity, certainty, and the minimization of unnecessary litigation" are equally relevant to the ERISA context as they were in the § 1983 cases. *See Wilson*, 471 U.S. at 275. We now hold explicitly what we think was implied by our rationale in *Wetzel*, that only one statute of limitations per state applies to benefits-recovery actions under 29 U.S.C. § 1132(a)(1)(B). Our next tasks, then, are to determine which

§ 1658; *see also Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382 (2004) (holding that § 1658 applies where the plaintiff's claim was made possible by a post-1990 enactment or amendment to a federal cause of action). This provision does not apply to ERISA's benefits-recovery cause of action under 29 U.S.C. § 1132(a)(1)(B), which has not been amended since 1990.

statute of limitations applies to a benefits-recovery claim brought in Washington State, and then to ask whether Wise's claim was timely filed under that statute.

## B

**[6]** Our circuit precedent resolves the question of which Washington statute of limitations we must apply in this case. In *Flanagan v. Inland Empire Electrical Workers Pension Plan & Trust*, 3 F.3d 1246 (9th Cir. 1993), we applied Washington's six-year statute of limitations for written contract claims to an ERISA benefits claim brought under 29 U.S.C. § 1132(a)(1)(B). *Id.* at 1252 (citing Wash. Rev. Code § 4.16.040). We applied this provision even though in that case, as in this one, the plan participants were not individually named in the plan documents and additional evidence was required to determine that the plaintiffs were beneficiaries of the ERISA plan. *Id.* at 1247-49. The Plan Administrators point to no intervening, higher authority that "is clearly irreconcilable with our prior circuit authority." *See Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc).[2] Accordingly, we are bound by *Flanagan* to apply Washington's six-year statute of limitations to Wise's benefits-recovery action.

**[7]** To determine whether Wise's claim is timely under the six-year statute of limitations, we must know when her cause of action accrued. Accrual of an ERISA action is a question of federal law, and thereunder an ERISA claim "accrues either at the time benefits are actually denied, or when the

---

[2]Even if we were not bound by *Flanagan* to apply the six-year limitations period and were determining the most-analogous limitations period in the first instance, we would choose Washington's six-year written-contract period. When choosing between multiple potentially-applicable statutes, "as a matter of federal policy the longer statute of limitations should apply." *See Lumpkin v. Envirodyne Indus., Inc.*, 933 F.2d 449, 465 (7th Cir. 1991) (applying Illinois's ten-year statute of limitations for written contracts instead of the five-year statute for oral contracts).

insured has reason to know that the claim has been denied." *Wetzel*, 222 F.3d at 649 (internal citation omitted). A claimant has a "reason to know" under the second prong of our accrual test when the plan communicates a "clear and continuing repudiation of a claimant's rights under a plan such that the claimant could not have reasonably believed but that his [or her] benefits had been finally denied." *Chuck v. Hewlett Packard Co.*, 455 F.3d 1026, 1031 (9th Cir. 2006) (internal quotation marks and citation omitted). We apply this established law of ERISA accrual to the undisputed facts concerning the Verizon Claims Review Committee's notification to Wise that her benefits had been finally denied. *See id.* at 1032-38 (applying undisputed facts to federal law of accrual); *Wetzel*, 222 F.3d at 649-50 (same).

**[8]** Wise received four denial-of-claim notices as she moved through the Plan Administrators' internal review process. The first three denial letters told Wise that she could seek further internal review of the adverse benefits determination and encouraged her to submit any supplemental medical documentation that might substantiate her disability claim. The fourth letter, dated March 14, 2002, was of a wholly different character. This fourth letter notified Wise that "all decisions of the [Verizon Claims Review Committee] are final," and did not indicate that any further internal review was possible. The letter went on to notify Wise, for the first time, of her right to bring a civil enforcement action under 29 U.S.C. § 1132(a) of ERISA, thus signaling the end of the internal review process. *See* 29 C.F.R. § 2560.503-1(g) (requiring certain disclosures, including a "right to sue" notification, when a plan administrator renders an adverse benefits determination). The fourth letter triggered Wise's ERISA claim because only after receiving this letter was she informed that no further internal appeals were possible and that her opportunity to submit more medical documentation had ceased. *See Wetzel*, 222 F.3d at 650 (measuring accrual from the date of the denial letter). Thus, we conclude that Wise's claim accrued, at the

earliest, on the date of the Verizon Claims Review Committee's final denial notification: March 14, 2002.[3]

**[9]** Considering this to be the accrual date, and applying the six-year statute of limitations, we conclude that Wise's benefits-recovery claim was timely-filed. Wise filed her complaint on March 11, 2008, within the six-year statute of limitations applicable to her claim. Because the claim fell inside the six-year window, Wise's suit was timely and the district court erred in dismissing it as limitations barred. Accordingly, we reverse the dismissal order as to the 29 U.S.C. § 1132(a)(1)(B) claim and proceed to examine Wise's remaining claims.[4]

## III

**[10]** Wise's second claim, brought under 29 U.S.C. § 1132(a)(2), alleges that the Plan Administrators breached the fiduciary duties imposed on them by ERISA. ERISA permits a plan participant to bring a civil enforcement action

---

[3]The Plan Administrators ask us to determine the accrual date by looking to the substance of the letter, which states that the Verizon Claims Review Committee reviewed Wise's claim on March 8, 2002. The Plan Administrators contend that any breach of their duties occurred on the date the Verizon Claims Review Committee reviewed Wise's claim, even if the letter denying the claim was not mailed until a few days later. The Plan Administrators argue that we should measure accrual from the date referenced in the letter, which would result in Wise's claim being barred even under the six-year limitations period. We decline to adopt the Plan Administrators' view of accrual. To do so would be to allow a plan administrator artificially to shorten the period in which a claimant could bring suit simply by delaying to mail the notification letter after a decision had been made. ERISA's remedial purpose does not condone such a possibility. Instead, to us it makes sense to say the claim accrued when the Plan Administrators' final decision was fairly communicated to Wise.

[4]We decide only that Wise's claim was timely and express no opinion on the merits of Wise's claim, including her contention that GTE's agreement to backdate her service date was binding on the Plan Administrators for benefits-eligibility purposes.

against any fiduciary "to make good to such plan any losses to the plan resulting from [the fiduciary's] breach." 29 U.S.C. § 1109(a). The claim for fiduciary breach gives a remedy for injuries to the ERISA plan as a whole, but not for injuries suffered by individual participants as a result of a fiduciary breach. *LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 254, 256 (2008) (reaffirming prior holding that where employee welfare benefit plans are concerned, 29 U.S.C. § 1109(a) remedies injuries to the entire plan and "does not provide a remedy for individual injuries distinct from plan injuries"); *see also Amalgamated Clothing & Textile Workers Union, AFL-CIO v. Murdock*, 861 F.2d 1406, 1414 (9th Cir. 1988) ("A fiduciary's mishandling of an individual benefit claim does not violate any of the fiduciary duties defined in ERISA."). To allege a fiduciary breach under § 1132(a)(2), Wise must allege that the fiduciary injured the benefit plan or otherwise "jeopardize[d] the entire plan or put at risk plan assets." *Amalgamated Clothing*, 861 F.3d at 1414.

**[11]** Wise, however, did not allege that the plan as a whole incurred an injury as a result of the Plan Administrators' mishandling of her claim. While Wise's complaint alleges that the § 1132(a)(2) claim is brought on behalf of, and for the benefit of, the plan and all its participants, there are no factual allegations that the Plan Administrators violated their duties with respect to anything other than Wise's individual claim. Although Wise was not required to plead detailed facts to overcome the Plan Administrators' dismissal motion under Federal Rule of Civil Procedure 12(b)(6), the Supreme Court has explained that "a plaintiff's obligation to provide the grounds of [his or her] entitlement to relief requires more than labels and conclusions," and, therefore, "naked assertion[s]" of wrongdoing unaccompanied by "further factual enhancement" do not survive a Rule 12(b)(6) motion. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007) (internal quotation marks and alteration omitted). Wise's fiduciary breach claim states conclusions about the Plan Administrators' alleged fiduciary breach—including assertions that the Plan Adminis-

trators failed to investigate, consult with qualified medical experts, or evaluate claims fairly—without alleging facts tending to show that any claim besides Wise's was mishandled or that the result of any such mishandling caused plan-wide injury. Accordingly, the district court properly dismissed Wise's second claim.

## IV

In her third claim, Wise seeks equitable relief under 29 U.S.C. § 1132(a)(3) in the form of an award of past and future benefits, removal of the Plan Administrators as plan fiduciaries, interest, attorney's fees, and costs. The complaint asserts that such relief is appropriate in equity because the remedies available to Wise at law are inadequate. The district court dismissed this claim as "duplicative of [Wise's] request for past and future long-term disability benefits."

Section 1132(a)(3) is a "catchall" or "safety net" designed to "offer[ ] appropriate equitable relief for injuries caused by violations that [§ 1132] does not elsewhere adequately remedy." *Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996). Because removal of the ERISA fiduciary is an available remedy under §§ 1109(a) and 1132(a)(2), Wise may not resort to this equitable catchall provision to seek the same relief. *See id.* at 515 ("[W]here Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be 'appropriate.' ").

[12] Wise's "equitable" claim for recovery of past and future benefits is likewise barred. Money damages are "the classic form of *legal* relief," and are not an available remedy under ERISA's equitable safety net. *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 255 (1993) (reading the "other appropriate equitable relief" language in § 1132(a)(3) to preclude an award of compensatory damages). The district court did not err in concluding that all of the relief Wise requested

under the equitable catch-all was duplicative of relief she sought under other sections of 29 U.S.C. § 1132. We therefore affirm the district court's dismissal of Wise's third claim.

## V

Wise's fourth claim was brought against her former employer, Verizon Communications, instead of against the Plan Administrators. She alleges that Verizon Communications breached several state law duties in the course of its efforts to recruit Wise to return to work there, and that its conduct constituted fraud, misrepresentation, and negligence. Wise sought damages to compensate her for the lost insurance benefits resulting from Verizon Communications' conduct. The district court dismissed the state law claims as preempted by ERISA's broad preemption provision, codified at 29 U.S.C. § 1144(a), and in the alternative as barred by the applicable state statutes of limitations.

**[13]** A state law claim is preempted by ERISA if it has a "connection with" or a "reference to" an ERISA-governed benefit plan. *Metro. Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 739 (1985). Stated another way, where "the existence of [an ERISA] plan is a critical factor in establishing liability" under a state cause of action, the state law claim is preempted. *See Ingersoll-Rand Co.*, 498 U.S. at 136, 139-40 (holding state tort and contract claims were preempted under ERISA, although no ERISA cause of action was pleaded, because the essence of the wrongful-discharge suit was that the employer had discharged the plaintiff to avoid paying ERISA benefits). ERISA's preemption provision functions "even when the state action purport[s] to authorize a remedy unavailable under the federal provision." *Id*. at 144 (quoting *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 55 (1987)).

**[14]** Wise's state law claims are preempted because her complaint necessarily references an ERISA plan. The state law theories of fraud, misrepresentation, and negligence all

depend on the existence of an ERISA-covered plan to demonstrate that Wise suffered damages: the loss of insurance benefits. Because Wise must allege the existence of an ERISA plan to state her claims under Washington law, the claims are preempted. We therefore affirm the district court's dismissal of Wise's fourth claim.

## VI

In conclusion, Wise's first claim, the benefits-recovery claim under 29 U.S.C. § 1132(a)(1)(B), was timely filed within Washington's six-year limitations period for suits on a written contract, the most analogous state statute. The balance of Wise's claims were properly dismissed. The order dismissing Wise's claims is therefore reversed as to the first claim and affirmed as to the remaining three claims. We remand the case for further proceedings not inconsistent with our decision. Each party shall bear its own costs on appeal.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED**.