In re LOUIS JONES ENTERPRISES,
INC., Debtor.

No. 10 B 11375.

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

Dec. 22, 2010.

Gregory K. Stern, P.C., Chicago, IL, for Debtor.

## OPINION ON OBJECTION TO AHMAD HINDI'S CLAIM NO. 16

JACK B. SCHMETTERER,
Bankruptcy Judge.

Debtor, Louis Jones Enterprises, Inc., filed for relief under Chapter 11 on March 16, 2010. It objected to the Claim of its employee Ahmad Hindi ("Hindi") in the amount of $7,683, which rested on his medical bills. Those bills should have been but were not paid by the health care policy that Debtor carried for its employees. Debtor, upon request from the bench, filed a Report giving details as to related events.

The following facts are drawn from Debtor's Report re: Claim Objection to Ahmad Hindi's Claim No. 16 [Docket No. 152], Debtor's Objection to Ahmad Hindi's Claim No. 16 [Docket No. 119], and Hindi's Claim.

Debtor had an employee health insurance plan (the "Plan") with Blue Cross Blue Shield. This Plan was funded, at least in part, by deductions from employee paychecks. On March 8, 2010, American Chartered Bank ("American Chartered"), as a judgement creditor of Debtor, obtained or enforced a setoff of Debtor's operating accounts and a citation lien on Debtor's "other accounts." The funds withheld from Debtor's employees in order to pay the premiums were then held in either Debtor's operating accounts or in Debtor's "other accounts." As a result, the premiums for the Plan were seized by the collection efforts of American Chartered and were not paid to the insurer for January 1, 2010, through March 31, 2010. Debtor did send checks to Blue Cross Blue Shield just prior to American Chartered's actions, but those checks were returned for insufficient funds because the accounts were seized to pay the judgment debt owed by Debtor. The Plan was then cancelled by the insurer, retroactive to January 1, 2010. Debtor caused a new health plan to be instituted May 1, 2010.

Creditor Hindi's post-bankruptcy wages from April 2, 2010, to April 16, 2010, a period when no health care plan was in effect, reflect payroll deductions totaling

$300.58 designated for health insurance premiums. Debtor now acknowledges that Hindi has an administrative priority claim for the $300.58 thereby deducted. Debtor's Report and Objection do not discuss Hindi's pre-bankruptcy wages, but Debtor almost certainly also made similar deductions from Hindi's wages for insurance from January 1, 2010, through March 16, 2010, during a period when no health care plan was in effect. No deductions for insurance were made from April 24, 2010, until the new plan came into effect on May 8, 2010.

Hindi therefore has an administrative claim of $300.58 for the deductions withheld from his wages post-bankruptcy for insurance at a time when there was no health care plan in effect, as well as an as yet unknown sum for pre-bankruptcy deductions from his paycheck if they were not used to pay premiums into the Plan.

Hindi filed a Proof of Claim for $7,683 for "Personal Injury." The documents attached to his Proof of Claim indicate that the claim is for medical expenses incurred by him on or about April 18, 2010, when no company health care insurance plan was in effect but deductions for health insurance were being withheld from Hindi's wages.

## LEGAL STANDARDS

Under the Employee Retirement Income Security Act of 1974 ("ERISA"), an "employee welfare benefit plan" is

> any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise,

> (A) medical, surgical, or hospital care or benefits ...

29 U.S.C. § 1002(1). "Plan assets,"

> include amounts ... that a participant or beneficiary pays to an employer, or amounts that a participant has withheld from his wages by an employer, for contribution to the plan as of the earliest date on which such contributions can reasonably be segregated from the employer's general assets.

*United States v. Whiting*, 471 F.3d 792, 799 (7th Cir.2006) (citing 29 C.F.R. § 2510.3–102(a)). Under ERISA, plan assets "shall be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries." 29 U.S.C. § 1103(c).

In addition,

> a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets ... or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A).

 Under ERISA, a cause of action may be brought against "any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries." *Pappas v. Buck Consultants, Inc.*, 923 F.2d 531, 535 (7th Cir.1991) (citing 29 U.S.C. § 1109(a) and § 1132(a)(2)). To bring an action for breach of a fiduciary duty under ERISA, a plaintiff "must allege that the fiduciary injured the benefit plan or otherwise jeopardize[d] the entire plan or put at risk plan assets." *Wise v. Verizon Communs. Inc.*, 600 F.3d 1180, 1189

(9th Cir.2010). The result of a fiduciary breaching his duty, is that a fiduciary

> ... shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

29 U.S.C. § 1109(a). Additionally, the prevailing party in an ERISA case may be entitled to reasonable attorney fees paid to its counsel. 29 U.S.C. § 1132(g)(1); *see Quinn v. Blue Cross & Blue Shield Ass'n,* 161 F.3d 472, 478 (7th Cir.1998) (recognizing two tests in analyzing whether the award of attorney fees is appropriate.)

In a case analogous to the instant one, *In re Charter Graphic Servs., Inc.,* 230 B.R. 759, 765 (Bankr.N.D.Tex.1998), employees paid into a health plan through payroll deductions. Those funds were not kept in a separate trust, and were used to pay a secured creditor, which caused the employer to be unable to fund the plan. The plan administrators were found to have breached their fiduciary duty "by failing to cause payroll deductions for plan contributions to be deposited into trust accounts," and allowing the funds to be paid to a secured lender. *Id.* at 767–78. The employees were allowed to collect for health claims incurred when no health plan was in effect due to the lack of funding, as well as attorney's fees. *Id.* at 771.

## DISCUSSION

■ The premiums withheld from Hindi's paychecks to pay health insurance premiums of Debtor's policy to cover employees were employee welfare benefit plan assets under ERISA, and as such should have been segregated and held in trust for the exclusive benefit of Hindi and other employees. *See* 29 U.S.C. §§ 1002(1) and 1103(c); *Whiting,* 471 F.3d at 799. The Debtor and its principals had a fiduciary relationship towards the plan, if they "exercise[d] any discretionary authority or control respecting" management of the plan or disposition of its assets. *See* 29 U.S.C. § 1002(21)(A); *Pappas,* 923 F.2d at 535. It is likely that they so exercised authority, but did not exercise that authority with care, with the result that American Chartered was able, through the setoff and liens against Debtor's accounts, to reach withholdings from employees that should have been held separately and in trust for benefit of the employees.

The premium payment checks sent by Debtor were returned for insufficient funds, due to the American Chartered's setoff and citation liens. There are two possibilities as to why Debtor was unable to pay the premiums: Either the Plan assets were commingled with Debtor's operating funds and subject to the setoff, or American Chartered Bank's citation lien on "other accounts" included a lien on a separate account holding the funds for the premiums. Either way, the Plan assets were not placed in a trust or protected when the collection actions occurred. Failure to put the assets in trust and prevent those funds from being seized was a breach of fiduciary duty. *See Charter Graphic,* 230 B.R. at 767–78.

■ The result is that Hindi seems to have several valid claims. The first claim is for funds deducted pre-bankruptcy from his paycheck that did not go to pay insurance premiums. *See Whiting,* 471 F.3d at 799 ("The funds withdrawn from employee paychecks represent an amount of money paid to employees in compensation. Once the contributions are withheld, the money no longer belongs to the company; rather, the funds belong to the employees. Therefore, employees have a present interest in the funds."). The claim for pre-

bankruptcy deductions would be a priority claim as a contribution to an "employee benefit plan arising ... arising from services rendered within 180 days before the date of the filing." *See* 11 U.S.C. § 507(a)(5). Since 180 days before the filing fell in September, 2009, all the deductions from January 1, when the plan was cancelled, through the date of the filing would qualify under § 507(a)(5). There is not enough information provided to determine the exact amount of that portion of the Claim, but the amount should be calculated and allowed to Hindi as a priority claim under that provision.

Second, for the post-bankruptcy payroll deductions from Hindi's paychecks, Debtor acknowledges that Hindi has an administrative expense claim for $300.58, presumably because it was part of his salary not used for its plan purpose. *See* 11 U.S.C. § 503(b)(1)(A)(i) (allowing administrative expenses after notice and a hearing for "the actual, necessary costs and expenses of preserving the estate, including ... wages [and] salaries ... for services rendered after the commencement of the case").

██ Third, Hindi has a claim against the Debtor under ERISA for the consequences of its fiduciary breach. He suffered harm which was shared by the Plan, because Plan assets were not properly segregated, and were used for improper purposes. *See Wise*, 600 F.3d at 1189. Debtor had an obligation to segregate and hold the plan assets in trust and use them solely for the benefit of the beneficiaries. Instead, the funds were used to satisfy, at least partially and albeit unwillingly, Debtor's debt to American Chartered. Failure to segregate and keep the trust funds inviolate was a violation of Debtor's fiduciary duty, and a direct violation of 29 U.S.C. § 1103, which states that "the assets of a plan shall never inure to the benefit of any employer." Here, there was at least par-

tial satisfaction of Debtor's debt and thereby a "benefit to any employer." Due to this breach of fiduciary duty, Hindi is entitled to "equitable or remedial relief as the court may deem appropriate." *See* 29 U.S.C. § 1109(a). In this case, the appropriate relief is for Debtor to pay for the medical expenses that would have been covered under the insurance that Hindi paid for and should have been protected by had Debtor not been careless with the withholdings. *See Charter Graphic*, 230 B.R. at 771.

Finally, if Hindi engages an attorney, he may be entitled to recover attorneys fees from Debtor under 29 U.S.C. § 1132(g)(1). If necessary, the Court will ask a volunteer attorney to appear on Hindi's behalf to assist him.

After the Court's ERISA concern was voiced from the bench, Debtor's Objection to Claim Number 16 was withdrawn. However, a further hearing on Hindi's claim has been set for January 6, 2011, at 11:30 a.m. to see what order Debtor might offer to be entered on Hindi's claim.