OPINION
BAYLSON, District Judge:
Oregon Teamster Employers Trust (“OTET”) appeals the grant of summary judgment in favor of Defendants Hillsboro Garbage Disposal, Inc. (“Hillsboro Garbage”), Robert Henderson (“Henderson”), and the Estate of Darrol Jackson (“Jackson”). The district court, adopting the findings of. a magistrate judge, granted summary judgment in favor of Defendants on (1) OTET’s breach of contract claims because the court found those claims to be preempted by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq. (“ERISA”); and (2) OTET’s restitution and specific performance claims because the court concluded that those claims were not cognizable under ERISA as they sought legal — not equitable — relief.
The issues presented are:
1. Whether OTET, an Employer Health and Benefit Plan, governed by ERISA, can recover damages, on a breach of contract claim, against a business which received health care benefits for two ineligible employees.
2. Whether OTET’s claims for restitution and specific performance are permitted.
3.Whether the district court abused its discretion in refusing to allow OTET to amend its complaint to allege fraud. We affirm the district court’s judgment.
I. Facts & Procedural History
OTET is an Employer Health and Benefit Plan governed by ERISA. OTET provides health and welfare benefits to the employees whose employers have entered into collective bargaining agreements with Joint Council No. 37 of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America, and local union affiliates.
In September 2003, Hillsboro Garbage and Teamsters Local Union No. 305 (“Union”) entered into a collective bargaining agreement (“CBA”) which made Hillsboro Garbage a subscriber to OTET, effective March 1, 2003, through February 28, 2007.[1] The CBA was renewed in April 2007 through February 28, 2012.
Under the terms of the Subscription Agreements, Hillsboro Garbage and the Union agreed to be bound by the provisions of the Trust Agreement governing OTET, chose the Health & Welfare Plan F/W (“Plan”) for eligible employees and their dependents, and agreed that Hillsboro Garbage would be subject to periodic audits to detect unauthorized contributions.
The Trust Agreement also authorized OTET’s Trustees to enter into special agreements with Hillsboro Garbage under which OTET would provide health and welfare benefits for the company’s non-bargaining unit employees (the “NBU Agreements”). The NBU Agreements specify that only individuals with a bona *1155 fide employment relationship with Hillsboro Garbage are eligible to participate in OTET benefit plans.
Starting in 2003, OTET received contributions for health care benefits coverage for Henderson and Jackson, purportedly as employees of Hillsboro Garbage. In fact, Henderson and Jackson were not employed by Hillsboro Garbage, but by a separate company, RonJons Unlimited, Inc. (“RonJons”), which had common ownership with Hillsboro Garbage.
In 2006, an audit revealed that Hillsboro Garbage had made unauthorized contributions on behalf of Henderson and Jackson. OTET sent Hillsboro Garbage a letter on August 21, 2006, enclosing a copy of the 2006 audit, stating that the audit uncovered $70,000 in unauthorized contributions, and advising Hillsboro Garbage that it had six months to make a written refund request.
Following the 2006 audit, OTET continued to accept contributions from Hillsboro on behalf of Henderson and Jackson and to pay medical claims for their benefit. In 2011, after another audit, OTET removed the two men from the plan and filed this lawsuit seeking recovery of benefits paid in excess of the contributions received from Hillsboro Garbage on their behalf. Count I of OTET’s second amended complaint seeks restitution from all Defendants, Count II seeks specific performance against Hillsboro Garbage to repay the benefits wrongly paid, and Counts III and IV assert common law breach of contract claims against Hillsboro Garbage.
After discovery, OTET moved for partial summary judgment. The magistrate judge recommended that OTET’s motion be denied and that the district court instead grant summary judgment in favor of Defendants. The magistrate judge concluded that Counts III and IV of OTET’s second amended complaint, the common law breach of contract claims, were preempted by ERISA. The magistrate also concluded that the claims for legal restitution and specific performance were not cognizable under ERISA. After supplemental briefing and argument, the district judge approved the magistrate judge’s recommendation, granting summary judgment to Defendants and dismissing the case with prejudice.
II. The District Court Properly Dismissed Counts III and IV (Common Law Breach of Contract) as Preempted by ERISA
A. ERISA Preemption
The district court found OTET’s state law claims preempted by ERISA because they are “premised on the existence of an ERISA plan, and the existence of the plan is essential to the claim[s’] survival” and they have a “genuine impact ... on a relationship governed by ERISA” — that between the plan and the employer. See Providence Health Plan v. McDowell, 385 F.3d 1168, 1172 (9th Cir.2004). We review de novo the question of whether ERISA preempts state law. Carmona v. Carmona, 603 F.3d 1041, 1050 (9th Cir.2010).
Under 29 U.S.C. § 1144(a), ERISA’s provisions “supersede any and all State laws insofar as they ... relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title.” A common law claim “relates to” an ERISA plan “if it has a connection with or reference to such a plan.” McDowell, 385 F.3d at 1172 (internal quotation marks omitted); see N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 656, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995). In determining whether a common law claim has “reference to” an ERISA plan, “the focus is whether the claim is premised on the existence of an ERISA plan, and whether the existence of the plan is essential to the claim’s surviv *1156 al.” McDowell, 385 F.3d at 1172. In evaluating whether a claim has a “connection with” an ERISA plan, we use a “relationship test” that focuses whether the “claim bears on an ERISA-regulated relationship, e.g., the relationship between plan and plan member, between plan and employer, between employer and employee.” Paulsen v. CNF Inc., 559 F.3d 1061, 1082 (9th Cir .2009).
OTET’s primary argument is that the district court’s preemption ruling is contrary to this court’s McDowell opinion. McDowell was a breach of contract action by a health insurer against two plan participants who were injured in an automobile accident, seeking reimbursement of benefits paid on the participants’ behalf out of a settlement in a tort action. 385 F.3d at 1170-71. The insurer alleged the participants breached both the reimbursement provision of the ERISA plan and separate agreements in which the participants directed their attorney to reimburse the insurer out of any third-party recovery. Id. at 1172. The district court concluded that ERISA preempted the action and dismissed. Id. at 1171. We reversed, holding that the insurer’s, “action for breach of contract does not have the requisite ‘connection with’ or ‘reference to’ an ERISA plan” because the parties “are not disputing the correctness of the benefits paid,” but rather the insurer “is simply attempting, through contract law, to enforce the reimbursement provision[s]” in the plan and subsequent separate agreements. Id. at 1172. “Adjudication of its claim does not require interpreting the plan or dictate any sort of distribution of benefits.” Id.
The district court distinguished McDowell, finding that the key question in this case was the eligibility of Henderson and Jackson to participate in the- OTET plan. OTET contends McDowell -is controlling because adjudication of its breach of contract claims does not require an interpretation of the plan or any distribution of benefits. There is no need to interpret the plan, OTET argues, because there is no dispute that Henderson and Jackson were not employees of Hillsboro Garbage and or that Ron Jons never entered into a CBA .with a labor organization specified in the plan’s Trust Agreement.
The district court properly rejected this argument. McDowell did not turn on whether the beneficiaries were eligible plan participants. Cf. Peralta v. Hispanic Bus., Inc., 419 F.3d 1064, 1069 (9th Cir.2005) (distinguishing McDowell in a case involving whether an ERISA plan administrator breached its fiduciary duty by failing to timely provide notification of plan cancellation because “interpretation of ERISA law lies at the heart of the dispute”). Here, however, although analysis of the employment status of the two individuals and whether RonJons had entered the CBA is admittedly straightforward, analysis of the terms of the ERISA plan is nonetheless required. Moreover, OTET alleged in its second amended complaint that Hillsboro Garbage breached the terms of the ERISA plan — not separate agreements. See Bui v. Am. Tel. & Tel. Co. Inc., 310 F.3d 1143, 1152 (9th Cir.2002) (holding ERISA preempted plaintiffs breach of contract claims “because the contract allegedly breached is the ERISA plan itself’).
B. Potential Liability Under the Labor Management Relations Act
The Labor Management Relations Act (“LMRA”), 29 U.S.C. § 186, bars employers from contributing to a trust fund on behalf of individuals who are not employees of the contributing employer. 29 U.S.C. § 186(c)(5); see also Davidian v. S. Cal. Meat Cutters Union & Food Emps. Benefit Fund, 859 F.2d 134, 135 (9th Cir.1988). The LMRA also prohibits contribu *1157 tions by employers into employee trust funds made other than in conformity with the provisions of written agreements detailing the basis on which those payments are to be made. See Producers Dairy Delivery Co., Inc. v. W. Conference of Teamsters Pension Trust Fund, 654 F.2d 625, 627 (9th Cir.1981). OTET argues that we must interpret ERISA to be consistent with the LMRA and ensure that OTET is not in violation of the LMRA. See Guthart v. White, 268 F.3d 1099, 1103 (9th Cir.2001) (noting that unless employee could point to a written agreement providing the basis on which his employer was to make payments to an ERISA fund, “it would be illegal for the fund to pay benefits” to him under the LMRA).[2]
OTET’s assertion that the district court’s finding of preemption would subject it to LMRA liability is entirely speculative. “The dominant purpose of [§ ] 302 is to prevent employers from tampering with the loyalty of union officials and to prevent union officials from extorting tribute from employers.” Turner v. Local Union No. 302, 604 F.2d 1219, 1227 (9th Cir.1979). Congress intended § 302 to target practices harmful to the collective bargaining process, including “bribery by employers during collective bargaining, extortion by employee representatives, and abuse of power by union officers who have sole control over welfare funds.” Toyota Landscaping Co., Inc. v. S. Cal. Dist. Council of Laborers, 11 F.3d 114, 117-18 (9th Cir.1993); see also Maxwell v. Lucky Constr. Co., Inc., 710 F.2d 1395, 1398 (9th Cir.1983) (“The congressional objective in enacting § 302 was to inhibit corrupt practices in the administration of employee welfare funds established through the collective bargaining process.”). These objectives are plainly not implicated in this case.[3]
Moreover, to the extent that there is an LMRA . violation, OTET bears at least some responsibility. OTET learned in 2006 that Hillsboro Garbage had allowed Henderson and Jackson to enroll and had made contributions on their behalf, but OTET took no action to address the issue until after a second audit in 2010.[4]
III. The District Court Properly Dismissed Counts I and II
A. Restitution and Specific Performance Under ERISA § 502(a)(3)
Section 502(a)(3) of ERISA authorizes civil suits “by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates ... the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of ... the terms of the plan.” 29 U.S.C. § 1132(a)(3).
Great-West Life & Annuity Insurance Co. v. Knudson, 534 U.S. 204, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002), considered the scope of relief available under *1158 § 502(a)(3). After a car accident left Knudson quadriplegic, Great-West paid the majority of her medical expenses under an ERISA plan that contained a reimbursement provision giving the plan “‘a first lien upon any recovery, whether by settlement, judgment or otherwise,’ that the beneficiary receives from the third party” and made the beneficiary “personally liable to [the Plan] ... up to the amount of the first lien” for failure to reimburse expenses. Id. at 207,122 S.Ct. 708 (alterations in original). Knudson later received $650,000 in a settlement. Id. The settlement allocated the majority of the funds to attorneys’ fees and a special needs trust, but' only the “portion of the settlement attributable to past medical expenses”— $13,828.70 — to reimburse the plan. Id. at 207-08, 122 S.Ct. 708. Great-West sued to recover the full value of the benefits it paid. Id. at 208-09,122 S.Ct. 708.
The Supreme Court rejected this claim. The Court explained that only “those categories of relief that were typically available in equity” are permitted under § 502(a)(3), but Great-West sought, “in essence, to impose personal liability on respondents for a contractual obligation to pay money — relief that was not typically available in equity” but only in an action at law. Id. at 210, 122 S.Ct. 708 (internal quotation marks omitted). The Court likewise rejected Great-West’s characterization of its claim as an equitable claim for restitution. See id. at 218, 122 S.Ct. 708. Because the settlement funds Great-West sought were not in Knudson’s possession, but instead had been distributed to a trust and to her attorney, the Court found “[t]he basis for petitioners’ claim” to be, at bottom, “that petitioners are contractually entitled to some funds for benefits that they conferred”; what they really sought was “imposition of personal liability for the benefits that they conferred upon respondents.” Id. at 214,122 S.Ct. 708.
In Sereboff v. Mid Atlantic Medical Services, Inc., the Court “eonsider[ed] again •the circumstances in which a fiduciary under [ERISA] may sue a beneficiary for reimbursement of medical expenses paid by the ERISA plan, when the beneficiary has recovered for its injuries from a third party.” 547 U.S. 356, 359, 126 S.Ct. 1869, 164 L.Ed.2d 612 (2006). The Sereboffs had received a settlement stemming from a car accident. Id. at 360, 126 S.Ct. 1869. They failed to reimburse Mid Atlantic, their health insurer, for medical expenses it had paid, but, pursuant to stipulation, put that amount in an investment account while the parties litigated their dispute.
The Supreme Court held, in contrast to Knudson, that the relief “Mid Atlantic sought” was equitable because it was directed at “specifically identifiable funds ... within the possession and control of the Sereboffs — that portion of the tort settlement due Mid Atlantic under the terms of the ERISA plan, set aside and preserved [in the Sereboffs’] investment accounts.” Id. at 362-63, 126 S.Ct. 1869 (second alteration in original) (internal quotation marks omitted).
The Court characterized Mid Atlantic’s claim as indistinguishable from an “equitable hen by agreement,” which arises where two parties “contract to convey a specific object even before it is acquired,” making the defendant a trustee over the property after he or she obtains it from a third party. Id. at 363-64, 126 S.Ct. 1869 (internal quotation marks omitted). The Court thus found Mid Atlantic’s claim against the Sereboffs viable because it was based on a plan provision that “specifically identified a particular fund, distinct from the Sereboffs’ general assets,” as well as “a particular share of that fund to which Mid Atlantic was entitled.”[5] Id. at 364,126 S.Ct. 1869.
*1159 B. Recent Ninth Circuit Precedent on Restitution and Specific Performance Under ERISA § 502(a)(3) Does Not Support OTET’s Argument
In Bilyeu v. Morgan Stanley Long Term Disability Plan, we vacated a district court judgment reimbursing a plan administrator’s overpayments of long-term disability benefits to a beneficiary because it did not constitute equitable relief under § 502(a)(3). 683 F.3d 1083, 1086 (9th Cir. 2012). The plan required Bilyeu to “reimburse Unum [the plan administrator] for any overpayment arising from her receipt of disability payments from any other source.” Id. at 1087. After Bilyeu contested termination of her long-term disability benefits, Unum filed a counterclaim seeking reimbursement of allegedly overpaid benefits. Id. at 1087-88.
The district court awarded reimbursement, id. at 1088, but we reversed, holding that the district court had improperly awarded legal relief unavailable under ERISA, id. at 1096. We explained that Sereboff “established] at least three criteria for securing an equitable lien by agreement in an ERISA action”:
First, there must be a promise by the beneficiary to reimburse the fiduciary for benefits paid under the plan in the event of a recovery from a third party. Second, the reimbursement agreement must specifically identify a particular fund, distinct from the beneficiary’s general assets, from which the fiduciary will be reimbursed. Third, the funds specifically identified by the fiduciary must be within the possession and control of the beneficiary.
Id. at 1092-93 (alterations, citations, and internal quotation marks omitted).
Unum’s claim met the first element because Bilyeu had promised to reimburse the plan for any overpayment resulting from Social Security benefits she received. Id. at 1093. But we found Unum’s argument that the claim met the second element “problematic” because the “overpaid disability benefits are not a particular fund, but a specific amount of money en-compassed within a particular fund — the long-term disability benefits Unum paid to Bilyeu.” Id. And, even if the overpaid benefits qualified as a “particular fund,” Unum had not established the funds were within Bilyeu’s “possession or control” because “Bilyeu ha[d] spent the overpaid benefits.” Id. at 1094. Moreover, we held that an equitable lien cannot “be enforced against general assets when the specifically identified property has been dissipated.” Id. at 1095. “Nothing in Sereboff suggests that a fiduciary can enforce an equitable lien against a beneficiary’s general assets when specifically identified funds are no longer in a beneficiary’s possession.” Id.
In McDowell, we evaluated a claim for reimbursement of medical expenses pursuant to an ERISA plan’s reimbursement provision after the beneficiary received a settlement relating to injuries from an automobile accident. 385 F.3d at 1170-71. Although the plan argued that relief was authorized under § 502(a)(3) because it had “term[ed its claim] an action in equity for specific performance,” we affirmed the district court’s dismissal of the plan’s claim for failure to state a claim. Id. at 1174. The plan was “simply attempting to enforce a contractual obligation for repayment,” and “such monetary reimbursement constitutes legal rather than equitable relief,” and not an allowable “constructive trust or equitable lien on particular property.” Id. (internal quotation marks omitted); see also Honolulu Joint Apprenticeship & Training Comm. of United Ass’n *1160 Local Union No. 675 v. Foster, 332 F.3d 1234, 1236-38 (9th Cir.2003) (holding that a union could not sue a defendant who obtained a scholarship loan under § 502(a)(3) for unjust enrichment after the defendant went to work for a non-union employer and failed to pay back the loan, contrary to the scholarship agreement).
C. Analysis
1. Specific Performance
In support of its specific performance claim, OTET relies on the statement in Sereboff that “ERISA provides for equitable remedies to enforce plan terms, so the fact that the action involves a breach of contract can hardly be enough to prove relief is not equitable.” 547 U.S. at 363, 126 S.Ct. 1869. OTET also points out that the Supreme Court has, outside the ERISA context, explained that specific performance of reimbursement obligations “attempts] to give the plaintiff the very thing to which he was entitled,” and is therefore equitable relief. Bowen v. Massachusetts, 487 U.S. 879, 895, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988) (internal quotation marks omitted).
But OTET’s claim for “specific performance of the reimbursement provisions of the plan” is squarely foreclosed by Knudson and McDowell. Knudson held that specific performance is typically a legal remedy unless it is “sought to prevent future losses that either were incalculable or would be greater than the sum awarded.” 534 U.S. at 211, 122 S.Ct. 708. The exception Sereboff carved out to this rule was for restitution sought from a particular fund (or “res ”), not specific performance. Sereboff, 547 U.S. at 362-63, 126 5.Ct. 1869.
2. Restitution
OTET also characterizes the reimbursement provision of the plan as an equitable lien by agreement, allowing for recovery under Sereboff. See id. at 363-65, 126 S.Ct. 1869. But OTET does not seek recovery from an identifiable res, as Sereboff requires. See id. at 363, 126 S.Ct. 1869 (requiring that equitable restitution be sought from a “particular fund”). As in Honolulu Joint Apprenticeship & Training Committee of United Ass’n Local Union No. 675 v. Foster, OTET wishes to recover from the general assets of Defendants’ funds that were never “actually transferred” to them — in this case funds paid directly to medical providers. 332 F.3d at 1238. Moreover, the plan’s reimbursement provision “specifically provides for the remedies sought,” which “reinforces the conclusion that this is essentially an action at law to remedy ... breach of a legal obligation.” Id.
OTET likewise cannot meet the “three criteria for securing an equitable lien by agreement in an ERISA action” that we have interpreted Sereboff to require. See Bilyeu, 683 F.3d at 1092-93. Although the plan contained “a promise by the beneficiary to reimburse” OTET, it did not “specifically identify a particular fund, distinct from the beneficiary’s general assets, from which the fiduciary will be reimbursed”— that is, there is no res from which OTET s.eeks recovery. See id. (alterations and internal quotation marks omitted). Moreover, even if the agreement specifically identified funds from which OTET could recover, the amounts it paid for the individual defendants’ medical expenses are not in their “possession and control.”[6] See id. (internal quotation marks omitted).
*1161 IV. The District Court Did Not Abuse Its Discretion in Denying OTET the Right to File a Third Amended Complaint
OTET contends in its appeal that the district court abused its discretion in denying OTET leave to amend its complaint to allege fraud. We review the district court’s denial of leave to amend for abuse of discretion. Sharkey v. O’Neal, 778 F.3d 767, 774 (9th Cir.2015).
OTET included a fraud count in its first amended complaint but voluntarily abandoned that claim when it filed the second amended complaint because it “believed” its “breach of contract claims were not preempted,” and thus the fraud claim “was superfluous.” Because OTET was given two opportunities to amend its complaint and unilaterally decided to eliminate the fraud count, it cannot establish abuse of discretion in denying the motion to amend, as it does not contend that it acquired any new knowledge or that there was any misconduct by Defendants that caused it to omit the fraud claim from the second amended complaint. See Royal Ins. Co. of Am. v. Sw. Marine, 194 F.3d 1009, 1017 (9th Cir.1999) (finding district court did not abuse its discretion denying leave to amend when the plaintiff had twice been given the opportunity to amend and the additional proposed amendment “did nothing more than reassert an old theory of liability based on previously-known facts”).
V. Conclusion
The judgment of the district court is AFFIRMED.

. OTET is a self-funded plan which provides health and welfare benefits to bargaining unit (and, in some cases, non-bargaining unit) employees. OTET contracts with Regence Blue Cross (“Blue Cross”) to process and pay claims.

. OTET expressly disclaims any argument that the LMRA preempts ERISA, and we would reject such an argument had it been advanced. See Saridakis v. United Airlines, 166 F.3d 1272, 1276 (9th Cir.1999) ("The preemption doctrine per se does not govern questions relating to the compatibility of two or more federal laws.”).

. Although we indicated in Guthart that an ERISA trust’s payments to an employee . would be unlawful under the LMRA absent a written agreement, that case did not address "‘the availability of remedies under, or in light of” ERISA. 263 F.3d at 1102 n. 3.

.To the extent that OTET complains that a finding of preemption would leave it without a remedy, the Supreme Court has made clear that ERISA preemption is appropriate even where ERISA would not provide a remedy for a state law complaint. See Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 54, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987); Wise v. Verizon Commc’ns, Inc., 600 F.3d 1180, 1190-91 (9th Cir.2010).

. US Airways, Inc. v. McCutchen, —• U.S. -, 133 S.Ct. 1537, 185 L.Ed.2d 654 (2013), *1159 the most recent case in which the Supreme Court interpreted § 502(a)(3), is not relevant here because Defendants have not asserted any equitable defenses.

. OTET’s argument that it is entitled to restitution of "ill-gotten gains” is similarly unavailing. Even if it were possible to obtain restitution of "ill-gotten gains” without identifying a specific res, which we doubt, it has not shown the funds were obtained through “fraud or wrongdoing.” Cement Masons Health & Welfare Trust Fund for N. Cal. v. Stone, 197 F.3d 1003, 1007 (9th Cir.1999) (same). OTET voluntarily abandoned its *1161 fraud claim and concedes it knew Henderson and Jackson were not employees of Hillsboro Garbage for the entire time the benefits it paid on their behalf exceeded contributions made on their behalf. Moreover, a beneficiary’s contractual obligation to reimburse an ERISA trust "does not make money previously paid by [the trust] 'ill-gotten gains’ subject to restitution within the meaning of § 1132(a)(3).” Id.