Filed 1/10/24 (unmodified opn. attached)

**CERTIFIED FOR PARTIAL PUBLICATION\***

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re ESSURE PRODUCT CASES. | A166579 |
| | (JCCP No. 4887) |
| LHC GROUP, INC., <br>     Plaintiff and Appellant, <br> v. <br> BAYER CORPORATION, <br>     Defendant and Respondent. | (Alameda County Super. Ct. No. RG16804878) <br><br> **ORDER MODIFYING OPINION AND DENYING REHEARING; NO CHANGE IN JUDGMENT** |

THE COURT:

Respondent's petition for rehearing is denied. The opinion is modified as follows:

The last sentence of the first full paragraph on page 10 is deleted and replaced with:

It simply seeks to recover damages that it and its participants sustained from Bayer's failure to warn about Essure — claims assigned to LHC through the subrogation clause to enforce on behalf of Plan participants.

---

\* Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts II and III of the Discussion section.

1

(*LHC Grp., Inc.*, at ** 2–3; *Garbell v. Conejo Hardwoods, Inc.* (2011) 193 Cal.App.4th 1563, 1571.)

Following the penultimate sentence of the first full paragraph on page 14, add:

(*Deck v. Developers Investment Co., Inc.* (2023) 89 Cal.App.5th 808, 824 [abuse of discretion exists if the trial court's decision is based on an error of law].)

Date___1/10/2024_____ ___          Tucher, P.J._____P. J.

In re Essure (A166579)

Trial Court:        Alameda County

Trial Judge:        Hon. Evelio Grillo

Attorneys:

Law Offices of Jessica A. Schaps, and Jessica A. Schaps; Bienstock, and Theodore Martin Bienstock; Weisbrod Matteis & Copley, Shane Welch for Appellants.

DLA Piper, Brooke Kim, Stanley J. Panikowski, Justin R. Sarno, Ilana H. Eisenstein for Respondents.

Orrick, Herrington & Sutcliffe, Andrew D. Silverman for amicus curiae on behalf of Respondent.

Filed 12/22/23 (unmodified opinion)

**CERTIFIED FOR PARTIAL PUBLICATION\***

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re ESSURE PRODUCT CASES. | |
| LHC GROUP, INC.,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>BAYER CORPORATION,<br><br>        Defendant and Respondent. | A166579<br><br>(JCCP No. 4887)<br><br>(Alameda County Super. Ct. No. RG16804878) |

LHC Group, Inc. (LHC) is the administrator of a self-insured employee welfare benefit plan, LHC Group Benefit Plan (Plan), which is governed by the Employment Retirement Income Security Act of 1974 (ERISA). (29 U.S.C. § 1001.) LHC — on behalf of itself and as a subrogee of Plan participants — sued Bayer Corporation (Bayer) seeking damages related to the manufacture and sale of Essure, an allegedly defective birth control device. The trial court sustained Bayer's demurrer without leave to amend, concluding ERISA preempts LHC's claims because they relate to an employee benefit plan. (29 U.S.C. § 1144(a).) It further concluded that, due to

---

\* Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts II and III of the Discussion section.

1

differences in implanting the devices and injuries, LHC misjoined participants' claims into a single case. Finally, the court struck LHC's claims for punitive damages because they are not authorized under the Plan's subrogation clause. LHC appealed.

In the published portion of our opinion, we hold LHC's state law claims do not "relate to" an ERISA plan and are therefore not preempted by ERISA. We reverse the order dismissing the complaint but affirm the order striking the request for punitive damages.

## BACKGROUND[1]

In April 2021, LHC filed a complaint against Bayer alleging tort claims such as negligence, strict products liability, concealment, and negligent misrepresentation, as well as quasi-contract and unjust enrichment claims related to Essure, a permanent female birth control implanted into the patient's fallopian tubes through a disposable delivery system. According to LHC, Bayer failed to comply with its responsibilities to warn about apparent serious health risks after the device was approved for sale. Specifically, Bayer received — but did not disclose — thousands of complaints of serious injuries, such as perforation of the uterus or fallopian tubes, device migration or fracture, prolonged bleeding, and unintended pregnancies. In addition, Bayer failed to disclose to the U.S. Food and Drug Administration (FDA) that the frequency and severity of these complications were greater than expected, and Essure must be removed through major surgery.

Upon becoming aware of this information, the FDA categorized Essure as a restricted device. In 2016, it required Essure to include a "black box

---

[1] The following facts are based on the allegations in LHC's complaint because this appeal follows a ruling on a demurrer. (*Doe v. Google, Inc.* (2020) 54 Cal.App.5th 948, 952.)

2

warning and Patient Decision Checklist" — to notify patients and physicians of serious health risks — and additional warnings regarding long-term risks — device removal could require surgery, removal of fallopian tubes, or hysterectomy. In July 2018, Bayer notified the FDA it would no longer sell or distribute Essure in the United States after December 2018.

LHC brought its claims both as its participants' subrogee and in its own right. Relevant here, the Plan included a subrogation clause noting "each Covered Person agrees that the Plan will have the right of subrogation with respect to the full amount of benefits paid to or on behalf of a Covered Person as the result of an injury, illness, disability or death that is or may be the responsibility of any Third Party." LHC sought medical expenses it actually paid for injured Plan participants, damages LHC itself suffered, and punitive damages. Attached to the complaint were participant identification numbers and the associated total costs resulting from Essure injuries. It did not seek any declaratory or injunctive relief, or any relief from or against Plan participants.

Bayer filed a demurrer, which the trial court sustained without leave to amend. The court concluded ERISA preempted LHC's claims because they "relate to" the Plan — the subrogation clause — and the court would need to interpret the Plan to determine LHC's ability to sue Bayer on behalf of Plan participants. The court also found LHC's claims had an impermissible connection with the Plan because they interfere both with the ability of Plan participants to assert claims on their own behalf and uniform plan administration. In addition, the court determined LHC's claims on behalf of 231 injured women were misjoined into a single case. LHC's ability to recover on behalf of each Plan participant "would depend on whether each plan participant had a meritorious claim against Bayer." Finally, the court

struck LHC's request for punitive damages, noting LHC, as a subrogee, could only recover as damages actual payments for medical expenses it made to Plan participants related to their injuries.

## DISCUSSION

LHC contends the trial court erred in sustaining the demurrer. Rulings on a demurrer are reviewed de novo, assuming the truth of the factual allegations and those reasonably inferred from the pleadings. (*Regents of University of California v. Superior Court* (2013) 220 Cal.App.4th 549, 558.)  We also review de novo whether ERISA preempts state law — an issue of statutory construction and an affirmative defense that would entirely bar the state claims.  (*Morris B. Silver M.D., Inc. v. International Longshore & Warehouse etc.* (2016) 2 Cal.App.5th 793, 805 (*Silver*); *Port Medical Wellness Inc. v. Connecticut General Life Insurance Co.* (2018) 24 Cal.App.5th 153, 171–172.)  LHC bears the burden of demonstrating the court erroneously sustained the demurrer.  (*Keyes v. Bowen* (2010) 189 Cal.App.4th 647, 655.)

## I.

LHC argues the trial court erred by concluding ERISA preempts its claims because they "relate to" — have a "reference to" or "connection with" — an ERISA plan.  We agree.

"ERISA is a comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans." (*Shaw v. Delta Air Lines, Inc.* (1983) 463 U.S. 85, 90 (*Shaw*).)  It contains expansive preemption provisions, designed to ensure employee benefit plan regulation is an exclusively federal concern.  (29 U.S.C. § 1144; *Marshall v. Bankers Life & Casualty Co.* (1992) 2 Cal.4th 1045, 1050; *Ingersoll-Rand Co. v. McClendon* (1990) 498 U.S. 133, 138 (*Ingersoll-Rand*).)  At issue here, ERISA preempts "any and all State laws insofar as they . . . relate to any employee benefit

4

plan," with exceptions not relevant here.[2]  (29 U.S.C. § 1144(a), (b)(2)(A).)

Any state-law claim that falls within the scope of ERISA's remedies "is preempted as conflicting with the intended exclusivity of the ERISA remedial scheme."  (*Paulsen v. CNF Inc.* (9th Cir. 2009) 559 F.3d 1061, 1084 (*Paulsen*).)  There are two categories of state laws conflict-preempted under ERISA: if it has a "reference to" an ERISA plan, or "if it has a connection with" such a plan.  (*Shaw*, at pp. 96–97.)  Bayer must overcome "the starting presumption that Congress does not intend to supplant state law."  (*New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Insurance Co.* (1995) 514 U.S. 645, 654 (*Travelers*).)

First, relying entirely on the Plan's subrogation clause, Bayer argues ERISA preempts LHC's tort claims, such as negligence, strict products liability, concealment, and negligent misrepresentation, and quasi-contract and unjust enrichment claims on behalf of its members because they reference an ERISA plan.  Not so.  "ERISA's preemptive scope is broad, but not all-encompassing."  (*Nevill v. Shell Oil Co.* (9th Cir. 1987) 835 F.2d 209, 212; *Travelers, supra,* 514 U.S. at pp. 655–656 [counseling against extending the phrase "relate to" to "the furthest stretch of its indeterminacy"].)  A state law has a "reference to" ERISA plans where it "acts immediately and

_____

[2] This is one of ERISA's two preemption provisions.  (*Cleghorn v. Blue Shield of California* (9th Cir. 2005) 408 F.3d 1222, 1225.)  The second — not at issue in this appeal — is the complete preemption provision in section 502, subdivision (a) of ERISA.  (29 U.S.C. § 1132(a).)  The sole purpose of section 502 "is to ensure that federal courts remain the sole forum and the sole vehicle for adjudicating claims for benefits under ERISA."  (*Rudel v. Haw. Mgmt. All. Ass'n.* (9th Cir. 2019) 937 F.3d 1262, 1269.)  "Therefore, any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy [in section 502] conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted."  (*Aetna Health Inc. v. Davila* (2004) 542 U.S. 200, 209.)

5

exclusively upon ERISA plans" or "where the existence of ERISA plans is essential to the law's operation.' " (*Gobeille v. Liberty Mutual Insurance Co.* (2016) 577 U.S. 312, 319–320 (*Gobeille*).) Claims affecting an ERISA plan in at most, a tenuous, remote, or peripheral manner *do not* "relate to" an ERISA plan. (*Silver*, *supra*, 2 Cal.App.5th at p. 805.)

Generally, claims based on common law negligence principles, such as the ones at issue here, do not act " 'immediately and exclusively' on ERISA plans." (*Paulsen*, *supra*, 559 F.3d at pp. 1066, 1082.) Indeed, LHC's tort claims — based on Bayer's failure to warn about Essure's alleged defects — make "no reference to" and "indeed function[] irrespective of, the existence of an ERISA plan." (*Ingersoll-Rand*, *supra*, 498 U.S. at p. 139.) Negligence law in failure-to-warn cases requires plaintiffs "to prove that a manufacturer or distributor did not warn of a particular risk for reasons which fell below the acceptable standard of care." (*Anderson v. Owens-Corning Fiberglas Corp.* (1991) 53 Cal.3d 987, 1002.) Strict liability claims require a plaintiff to prove "the defendant did not adequately warn of a particular risk that was known or knowable in light of the generally recognized and prevailing best scientific and medical knowledge available at the time of manufacture and distribution." (*Ibid.*) Nothing suggests the existence of an ERISA plan is a critical factor in establishing Bayer's liability under any of the traditional state laws of general application. (Contra *Ingersoll-Rand*, at pp. 139–140 [ERISA preempted claim employer principally terminated employee to avoid contributing to pension fund since "the existence of a pension plan is a critical factor in establishing liability under the State's wrongful discharge law"].)

True, LHC could not allege its claims in the absence of the Plan's subrogation clause. (*Silver*, *supra*, 2 Cal.App.5th at p. 807.) By itself, however, this is insufficient to demonstrate the existence of the Plan is

6

"essential" to LHC's claims. (See, e.g., *Ingersoll-Rand*, *supra*, 498 U.S. at p. 139 [the "fact that collection might burden the administration of a plan did not, by itself, compel pre-emption"].) ERISA does not preempt "run-of-the-mill state-law claims" such as "torts committed by an ERISA plan," even though those claims may obviously affect and involve ERISA plans as well as their trustees. (*Mackey v. Lanier Collection Agency & Service, Inc.* (1988) 486 U.S. 825, 833, 841 [ERISA did not preempt the state's statutory general garnishment procedures despite being used to collect judgments against ERISA plan participants].) Subrogation simply "places the insurer in the shoes of its insured to the extent of its payment." (*Progressive West Ins. Co. v. Superior Court* (2005) 135 Cal.App.4th 263, 272.) Neither party disputes the terms of the Plan, nor do LHC's claims turn on an analysis of those terms. Without more, the subrogation clause does not warrant preemption.[3] (Cf. *Silver*, *supra*, 2 Cal.App.5th at p. 807 [that "ERISA plan is an initial step in the causation chain, without more, is too remote of a relationship with the covered plan to support a finding of preemption"].)

*Central States, Southeast and Southwest Areas Health and Welfare Fund v. Health Special Risk, Inc.* (N.D. Tex., June 13, 2013, Civ. A. No. 3:11-cv-2910-D) 2013 U.S. Dist. LEXIS 83400 (*Central States*) — holding a state-law subrogation claim is conflict-preempted under ERISA because it addresses the right to receive plan benefits — does not alter our conclusion. We are not bound by lower federal court decisions, even on federal questions. (*Barrett v. Rosenthal* (2006) 40 Cal.4th 33, 58.) Nor is *Central States* persuasive. (*Central States*, *supra*, \* 14.) The court relied entirely on *Arana*

---

[3] At oral argument, Bayer argued for the first time that California law regarding subrogation bars LHC's claims against third party tortfeasors. We express no opinion on this issue.

7

*v. Ochsner Health Plan* (5th Cir. 2003) 338 F.3d 433 (*Arana*), a case addressing whether "ERISA *completely* preempted the state-law claim of a plan *beneficiary* seeking a declaratory judgment that he was not obligated to reimburse his ERISA plan from proceeds of a tort action settlement for health benefits paid by the plan." (*Central States*, *supra*, * 16, italics added.)

Bayer's attempt to extract preemption principles from *Arana* is inapt — no comparable dispute exists here. LHC alleges it was liable for its injured members' medical treatment and hospital expenses due to Essure — that is, LHC bore the costs of Essure. Unlike the ERISA plan in *Arana*, LHC does not seek plan benefits, or any declaratory or injunctive relief from or against any Plan participants. (*LHC Grp., Inc. v. Bayer Corp.* (N.D. Cal., Mar. 14, 2022, No. 21-cv-03877-HSG) 2022 U.S. Dist. 44929 (*LHC Grp., Inc.*).) Rather, LHC seeks damages from a *third party* in the amount of the health care costs incurred by injured members, to which LHC was subrogated. Where the state-law claims do not entail interpreting an ERISA plan, dictate any distribution of benefits, and the claimant has "already paid ERISA benefits" and does not dispute "the correctness of the benefits paid," the claim is not preempted. (*Providence Health Plan v. McDowell* (9th Cir. 2004) 385 F.3d 1168, 1172.)

Second, LHC's claims do not have an impermissible connection with an ERISA plan. In reaching this conclusion, we presume Congress did "not intend to supplant" state laws "regulating a subject of traditional state power" unless they result in direct regulation of a fundamental ERISA function. (*Gobeille*, *supra*, 577 U.S. at p. 325.) An impermissible connection exists where the state law governs a " 'central matter of plan administration,' " " 'interferes with nationally uniform plan administration,' " (*id.* at p. 320) forces "an ERISA plan to adopt a certain scheme of substantive

8

coverage," or restricts "its choice of insurers." (*Travelers*, *supra*, 514 U.S. at p. 668.)  Critical to this determination is whether the state law bears on an ERISA-regulated relationship — that is, a relationship between the plan and plan member, plan and employer, and employer and employee.  (*WSB Elec. v. Curry* (9th Cir. 1996) 88 F.3d 788, 794.)

As a preliminary matter, LHC's tort and quasi-contract claims involve areas traditionally regulated by the state.  (*Geweke Ford v. St. Joseph's Omni Preferred Care Inc.* (9th Cir. 1997) 130 F.3d 1355, 1359 [contract law traditionally regulated by states]; *Keams v. Tempe Technical Inst., Inc.* (9th Cir. 1994) 39 F.3d 222, 226 [negligence and negligent misrepresentation traditionally regulated by states].)  Bayer must accordingly overcome the considerable presumption that Congress did not intend to supplant those laws.  (*Gobeille*, *supra*, 577 U.S. at p. 325.)  It fails to do so.

To begin, LHC's claims against Bayer, a third-party pharmaceutical company rather than Plan participants, do not bear on any of these ERISA-regulated relationships.  (*Bafford v. Northrop Grumman Corp.* (9th Cir. 2021) 994 F.3d 1020, 1031 [plan beneficiaries' professional negligence claims against outside administrator for grossly overestimating monthly benefits not conflict preempted under ERISA].)  Indeed, state-law negligence claims generally do "not encroach on any actuary-participant relationship governed by ERISA when asserted against a non-fiduciary actuary." (*Paulsen*, *supra*, 559 F.3d at p. 1083.)  Rather, state-law claims that arise from ordinary relationships with an ERISA-regulated entity and "do not touch on [ERISA] status," as is the case here, are not preempted.  (*Abraham v. Norcal Waste Systems, Inc.* (9th Cir. 2001) 265 F.3d 811, 822 [ERISA does not "regulate those relationships where a plan operates like any other commercial entity," such as "the plan and the landlords from whom it leases its office space"],

9

abrogated on other grounds by *Fossen v. Blue Cross & Blue Shield of Mont., Inc.* (9th Cir. 2011) 660 F.3d 1102, 1112.)

While LHC's claims depend in part on its subrogation rights, this does not directly affect the relationship between the Plan and its participants, as Bayer contends. Although the trial court may be required to review the subrogation clause, LHC's claims do not address an area of exclusive federal concern, such as seeking plan benefits. (*LHC Grp., Inc.*, *supra*, at * 2; *Silver*, *supra*, 2 Cal.App.5th at p. 804.) It simply seeks to recover damages that it and its participants sustained from Bayer's failure to warn about Essure — claims assigned to LHC to enforce on behalf of Plan participants. (*LHC Grp., Inc.*, at ** 2–3.)

Nor does the possibility that the trial court may need to consider the Plan's relationship to its participants — specifically, how to address competing privacy interests of participants in different states — render LHC's claims a matter of federal concern. Leaving aside Bayer's failure to support this assertion with any case law or statutory authority, LHC's claims have " 'a tenuous, remote, or peripheral connection with" the Plan and its participants' privacy rights, "as is the case with many laws of general applicability." (*Travelers*, *supra*, 514 U.S. at p. 661.) The claims do not threaten to impose different regulatory requirements on the Plan's operation, such as by requiring it to maintain different sets of records in different states, making different sets of benefits available, or complying with different fiduciary standards. (*Fort Halifax Packing Co. v. Coyne* (1987) 482 U.S. 1, 9.) Nor do they bind the Plan to do anything. (*Howard Jarvis Taxpayers Association v. Cal. Secure Choice Ret. Sav. Program* (9th Cir. 2021) 997 F.3d 848, 858 ["ERISA applies to 'plans, rather than simply to *benefits*,' " thus indicating the distinction between state laws that are beyond ERISA's

preemptive scope].) Rather, the claims are remote from that with which ERISA is concerned — "reporting, disclosure, fiduciary responsibility, and the like." (*Shaw*, *supra*, 463 U.S. at p. 98.)

Because regulating the negligent behavior of third parties does not target any aspect of an ERISA-occupied field or impede ERISA's objectives, LHC's claims do not have an impermissible "connection with" ERISA plans. None of Bayer's cited authorities — which address disputes between ERISA-related parties or ERISA-centric issues — persuade us otherwise. (See, e.g., *Oregon Teamster Employers Trust v. Hillsboro Garbage Disposal, Inc*. (9th Cir. 2015) 800 F.3d 1151, 1156 [ERISA preempted plan's claims that defendant breached terms of the ERISA plan and court was required to analyze the plan to establish whether beneficiaries were eligible plan participants]; *Wise v. Verizon Communications, Inc*. (9th Cir. 2010) 600 F.3d 1180, 1191 [preemption applied to beneficiary's state claims against employer resulting in loss of insurance benefits, as claims depended on the existence of an ERISA-covered plan to demonstrate damages].)

In sum, ERISA does not preempt LHC's claims.

## II.

LHC next contends the trial court erred by sustaining the demurrer on the basis that the complaint misjoined Plan participants into a single action. Joinder of plaintiffs is permitted if they assert a right to relief arising out of the same transaction or occurrence, and if there is a common question of law or fact. (Code Civ. Proc., § 378, subd. (a)(1).) The statute is liberally construed in favor of joinder. (*Petersen v. Bank of America Corp*. (2014) 232 Cal.App.4th 238, 249 (*Petersen*) [permissive joinder promotes trial convenience, administrative efficiency, and expediting a final

determination].)  Based on the statute's language and its broad construction, we agree the court erred in sustaining the demurrer on this basis.

Relevant here, courts broadly construe the requirement that relief arise from the same transaction or series of transaction — the element satisfied if there is any factual relationship among the joined claims.[4]  (*Petersen, supra,* 232 Cal.App.4th at p. 249.)  A right to relief arising out of the same transaction or series of transactions exists where plaintiffs' causes of action allege a common scheme leading to a series of transactions similar in kind and manner of operation.  (*Anaya v. Superior Court* (1984) 160 Cal.App.3d 228, 232–233 (*Anaya*) [claims of over 200 employees and employees' family members properly joined despite claiming injuries from exposure to hazardous chemicals at place of employment over the course of 20 to 30 years]; *State Farm Fire & Cas. Co. v. Superior Court* (1996) 45 Cal.App.4th 1093, 1113 (*State Farm*) [joinder authorized for 165 individual homeowners whose homes were damaged in an earthquake in an action against their insurer], abrogated on another point as stated in *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 183.)

Applying the liberal rule permitting joinder, allegations regarding a common scheme exist here.  (*Anaya, supra,* 160 Cal.App.3d at p. 232.)  LHC alleged Essure was defective and unreasonably dangerous due to inadequate warnings and instructions.  Specifically, Bayer failed to comply with federal regulations requiring adequate investigations and handling of complaints

---

[4] There does not appear to be any dispute LHC's complaint raises common questions of law regarding the Plan participants' claims.  We also find no issue with this factor.  (*David v. Medtronic, Inc.* (2015) 237 Cal.App.4th 734, 737–738 [common questions of law or fact exist in case where plaintiffs allege defendant is liable for injuries when it was aware of dangers of a particular use of a medical device, but nonetheless widely promoted its use].)

related to Essure. It failed to timely report adverse events or serious health risks of the device to the FDA and physicians. The FDA repeatedly cited Bayer for failure to report complications, demonstrating "ongoing, systematic, and widespread conduct by Defendants that signified problems with the device started before" participants received Essure. Moreover, it alleged Bayer willfully deceived the public — including injured Plan participants — by concealing material information. Timely and adequate reporting of adverse events to the FDA, LHC alleged, would have effectively warned physicians. These allegations "reflect a claim containing common facts central" (*State Farm*, *supra*, 45 Cal.App.4th at p. 1113) to Bayer's alleged duties and failures — a systematic failure to warn and misrepresentation that invaded the rights of Plan participants. (*Aldrich v. Transcontinental Land & Water Co.* (1955) 131 Cal.App.2d 788, 791–792 [joinder proper where plaintiffs purchased property in same subdivision based on identical misrepresentations about the property]; compare with *David v. Medtronic, Inc.*, *supra,* 237 Cal.App.4th at p. 741 [joinder improper where plaintiffs failed to allege, for example, surgery occurred based at "least in part on the same representation"].) This satisfies the requirement of the same transaction or series of transactions. (*State Farm*, at p. 1113.)

Differences in dates of device implantation or the resulting injuries do not render joinder inappropriate. (*Anaya*, *supra*, 160 Cal.App.3d at p. 233 [noting community of interest linking petitioners not destroyed because employees were exposed on different occasions].) Joinder is permissible when based on commonality regarding liability rather than damages. (*Petersen*, *supra*, 232 Cal.App.4th at p. 252.) In those circumstances, while the damages among Plan participants may vary widely, "that is not the salient point." (*Id.* at p. 253.) Rather, it is that "*liability* is amenable to mass action

13

treatment." (*Ibid*.) To the extent there may be difficulties in tracking the damages of the 231 Plan participants, that may be addressed in proceedings under Code of Civil Procedure section 379.5 — authorizing courts to make orders as appear just, including ordering separate trials. (*Anaya*, pp. 233–234.) But it does "not furnish grounds for finding a misjoinder of plaintiffs." (*Id*. at p. 234.)

For that reason, we reject Bayer's additional argument that dismissal was proper because the complaint — joining many injured participants in a single action — violated the trial court's case management order. The order stated each plaintiff must file a separate case because joining multiple plaintiffs in a single complaint is misjoinder based on the facts of Essure cases. As a preliminary matter, Bayer concedes LHC is a single plaintiff. Thus, LHC was authorized under the case management order to file its claims against Bayer in a single action. To the extent the case management order prohibited a single plaintiff from bringing multiple claims against a single defendant based on misjoinder, this was improper. Trial courts no doubt have broad discretion to create suitable methods of practice to manage complex litigation, such as using a case management order. (*Rutherford v. Owens-Illinois, Inc*. (1997) 16 Cal.4th 953, 967; *Lu v. Superior Court* (1997) 55 Cal.App.4th 1264, 1267.) But the orders must not conflict with any statewide statute, rule of law, or rules of court. (*Rutherford*, at p. 967.) As explained, the court's justification for requiring plaintiffs to file separate cases was based on an erroneous reading of the joinder provisions. The case management order is not a sufficient basis for dismissing LHC's complaint.

### III.

Finally, LHC contends the trial court erred by striking its claims for punitive damages. On this point, we disagree.

14

Resolving whether punitive damages are authorized for LHC's various tort and quasi-contract claims is unnecessary. As the trial court concluded, the subrogation clause upon which LHC bases its claims states "the Plan will have the right of subrogation with respect to the full amount of *benefits paid to or on behalf of* a Covered Person as the result of an injury, illness, disability or death that is or may be the responsibility of any Third Party." (Italics added.) Under the plain terms of the Plan agreement, LHC cannot recover damages in subrogation greater than those it paid to cover Plan participant benefits. (*Johnson v. Oliver* (1968) 266 Cal.App.2d 178, 181, 182 ["the subrogation rights of the insurer are limited in extent to the amount paid by it to its insured and do not encompass the whole cause of action"].)

Punitive damages do not compensate injured parties. (*Ferguson v. Lieff, Cabraser, Heimann & Bernstein* (2003) 30 Cal.4th 1037, 1046.) They " 'punish the tortfeasor whose wrongful action was intentional or malicious, and to deter him and others from similar extreme conduct.' " (*Ibid.*) Indeed, consistent with these principles, LHC expressly states it is entitled to punitive damages in an appropriate amount "to punish Defendants and deter them from similar conduct in the future" based on conduct that disregarded the rights of the Plan's members. LHC does not allege that the amount the Plan paid to the insured included punitive damages. Nor does LHC allege it is itself entitled to punitive damages. Therefore, LHC cannot recover such damages.

## DISPOSITION

The judgment dismissing the complaint is reversed. The order striking LHC's request for punitive damages is affirmed. LHC is entitled to costs on appeal. (Cal. Rules of Court, rule 8.278(a)(5).

15

RODRÍGUEZ, J.

WE CONCUR:

TUCHER, P. J.

FUJISAKI, J.

A166579

In re Essure (A166579)

Trial Court:        Alameda County

Trial Judge:        Hon. Evelio Grillo

Attorneys:

Law Offices of Jessica A. Schaps, and Jessica A. Schaps; Bienstock, and Theodore Martin Bienstock; Weisbrod Matteis & Copley, Shane Welch for Appellants.

DLA Piper, Brooke Kim, Stanley J. Panikowski, Justin R. Sarno, Ilana H. Eisenstein for Respondents.

Orrick, Herrington & Sutcliffe, Andrew D. Silverman for amicus curiae on behalf of Respondent.